**HILL v. McCALL**

[148 N.C. App. 698 (2002)]

ELIZABETH ROCHESTER HILL, Plaintiff v. CASEY BLAKE McCALL, Defendant

ELIZABETH ROCHESTER HILL, Plaintiff v. CASEY BLAKE McCALL,
BILLY JACK McCALL, Defendants

No. COA01-442

(Filed 19 February 2002)

**Damages and Remedies; Negligence— aggravation of existing injury—instruction not warranted**

The trial court erred in a negligence action by instructing the jury on activation or aggravation of an existing injury where there was evidence of the possibility that plaintiff's herniated disk existed prior to the incident, but no evidence of its actual existence.

Appeal by plaintiff from judgment dated 5 September 2000 and from order dated 5 September 2000 by Judge Zoro J. Guice, Jr. in Jackson County Superior Court. Heard in the Court of Appeals 22 January 2002.

*Melrose, Seago & Lay, P.A., by Randal Seago, for plaintiff-appellant.*

*Frank J. Contrivo, P.A., by Andrew J. Santaniello, for defendant-appellee.*

GREENE, Judge.

Elizabeth Rochester Hill (Plaintiff) appeals a judgment dated 5 September 2000 ordering Casey Blake McCall (Defendant) pay Plaintiff damages in the amount of $2,000.00 and an order dated 5 September 2000 denying Plaintiff's motion for a new trial.

Plaintiff filed a complaint dated 2 June 1999 alleging negligence against Defendant for an incident occurring on 25 January 1999.[1] Defendant admitted in his answer that he was at fault in causing the incident but specifically denied that his conduct was a proximate cause of Plaintiff's injuries. Accordingly, the only issue that remained for trial was whether Defendant's negligence proximately caused

---

1. Plaintiff originally filed her complaint against Defendant and Billy Jack McCall. Plaintiff, however, filed a voluntary dismissal without prejudice of the action as to Billy Jack McCall.

Plaintiff's injuries and if so, what amount of damages Plaintiff was entitled to.

A jury trial on Plaintiff's case began on 13 December 1999. At trial, Plaintiff testified that on 25 January 1999, the vehicle she was driving was hit in the rear by a vehicle driven by Defendant. After Plaintiff went home and had slept, she began experiencing neck, back, and shoulder pains. The next day, Plaintiff visited a nurse practitioner and was later seen by Dr. Steven Deweese (Dr. Deweese), who requested x-rays and an MRI be taken. Dr. Deweese subsequently referred Plaintiff to Dr. Keith Melvin Maxwell (Dr. Maxwell). Prior to the incident, Plaintiff had not experienced any problems with either her neck or her back. After treatments and tests by various doctors, Plaintiff's total medical expenses amounted to $21,077.33.

On cross-examination, Plaintiff testified she had never experienced either neck or back pain prior to the incident, although she did have a disorder that affected the blood vessels in her brain, which she referred to as an "ABM of the brain." Prior to 25 January 1999, Plaintiff was involved in one other automobile incident in which she was rear ended, but sustained no injuries.

Dr. Maxwell testified as an expert in orthopedic surgery. Dr. Maxwell treated Plaintiff after the 25 January 1999 incident. Plaintiff told Dr. Maxwell she had been rear ended by Defendant's vehicle, which was traveling approximately thirty-five miles per hour. During her initial visit, Plaintiff complained of both neck and arm pain occurring immediately after the incident and worsening thereafter. After performing diagnostic tests on Plaintiff, Dr. Maxwell concluded Plaintiff had a herniated disk in the left side of her neck. Based on Plaintiff's account, Dr. Maxwell believed the incident proximately caused Plaintiff's herniated disk. Dr. Maxwell testified he found Plaintiff's account of the incident to be credible.

On cross-examination, Dr. Maxwell testified he was basing his conclusions and opinions on the account provided by Plaintiff and the integrity of her account was essential for a proper diagnosis. According to Dr. Maxwell, approximately thirty-four percent of the middle-age adult population could be diagnosed as having a herniated disk. Although an MRI taken on 3 February 1999, about a week after the incident, showed Plaintiff to have a herniated disk, the possibility exists the herniated disk predates the incident and there could be causes other than the incident for Plaintiff's herniated disk.

Dr. Deweese testified as an expert in internal medicine, and he testified concerning his treatment of Plaintiff shortly after the incident. While Dr. Deweese could not state to a medical certainty whether Plaintiff's herniated disk was proximately caused by the incident, he did state that prior to the incident, Plaintiff was virtually pain free. On cross-examination, Dr. Deweese testified that prior to the automobile incident on 25 January 1999, he and Plaintiff did not have a physician/patient relationship, although he was familiar with her.

Plaintiff read into evidence portions of Defendant's deposition testimony taken on 24 November 1999 in which Defendant testified he was traveling approximately twenty-five to thirty miles per hour prior to hitting his brakes and was not going very fast at the time there was contact between the two vehicles. At trial, however, Defendant testified he was traveling approximately ten miles per hour at the point of impact between his vehicle and Plaintiff's vehicle.

At the close of the evidence, the trial court conducted a conference on proposed jury instructions. Plaintiff stated it was not necessary to give an instruction on aggravation or activation of a pre-existing physical condition as there was no evidence of any pre-existing condition. The trial court overruled Plaintiff's objection.

The trial court instructed the jurors that they were "the sole judges of the weight to be given to any evidence" and the "sole judges of the credibility of each witness." After giving instructions to the jury regarding proximate cause, the trial court further instructed the jury that if a

> defendant's negligence aggravates or activates a pre[-]existing physical condition, the defendant is liable only to the extent that his wrongful act proximately and naturally aggravated the plaintiff's condition. The defendant is not liable for damages attributable solely to the original condition.

After deliberating, the jury returned a verdict in favor of Plaintiff finding her damages to be in the amount of $2,000.00.

Plaintiff subsequently moved for a new trial on 22 December 1999. The trial court entered a judgment on the jury's verdict and denied Plaintiff's motion for a new trial on 5 September 2000.

**HILL v. McCALL**

[148 N.C. App. 698 (2002)]

The dispositive issue is whether there was any evidence Plaintiff had a pre-existing herniated disk warranting an instruction on activation or aggravation of a previous injury.

Plaintiff contends the trial court erred in instructing the jury on activation or aggravation of a previous injury as there was insufficient evidence to support that Plaintiff had a pre-existing herniated disk. We agree.

In instructing a jury in a civil case, "the trial court has the duty to explain the law and apply it to the evidence on the substantial issues of the action." *Wooten v. Warren*, 117 N.C. App. 350, 358, 451 S.E.2d 342, 347 (1994). The trial court is permitted to instruct a jury on a claim or defense only "if the evidence, when viewed in the light most favorable to the proponent, supports a reasonable inference of such claim or defense." *Id.* To permit an instruction on the activation or aggravation of a pre-existing injury, the evidence, when viewed in the light most favorable to the proponent of the instruction, must support an inference of the aggravation of a pre-existing injury. *Id.* at 358, 451 S.E.2d at 348. A pre-existing injury is one which exists at the time of the wrongful act. *See Potts v. Howser*, 274 N.C. 49, 54, 161 S.E.2d 737, 742-43 (1968); *see also American Heritage College Dictionary* 1078 (3d ed. 1993) (pre-exist means "[t]o exist before; precede").

In this case, the evidence, when viewed in the light most favorable to Defendant, the proponent of the instruction on activation and aggravation of a pre-existing injury, does not support an inference of the aggravation of a pre-existing condition. Dr. Maxwell testified that while it was possible the herniated disk existed prior to the incident, it was his opinion the incident caused the herniated disk. Although possible, there is no evidence whatsoever in the record to this Court that Plaintiff's herniated disk existed prior to the 25 January 1999 incident.[2] Accordingly, as the record to this Court was devoid of evidence relating to a pre-existing condition, the trial court erred in instructing the jury on activation or aggravation of a pre-existing injury. Therefore, this case must be remanded for a new trial on the issue of damages. *See Wooten*, 117 N.C. App. at 359, 451 S.E.2d at 348.

---

2. In order to present an issue of causation to a jury, the evidence must raise more than " 'a mere conjecture, surmise and speculation as to [causation].' " *Hinson v. Nat. Starch & Chem. Corp.*, 99 N.C. App. 198, 202, 392 S.E.2d 657, 659-60 (1990) (citation omitted). Rather, there must be "[s]ome degree of probability, however small," to provide the jury with a question of causation. *Id.*

New trial.

Judges HUNTER and TYSON concur.